United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2007**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 06-11215
Summary Calendar

———————

JIMMY WHITT,
INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF JAMIE EARL WHITT, DECEASED,

Plaintiff-Appellant,

VERSUS

STEPHENS COUNTY;
JAMES D. REEVES,
SHERIFF OF STEPHENS COUNTY,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
AND
JOHN DOES NUMBERS 1 THROUGH 5,

Defendants-Appellees,

———————————

Appeal from the United States District Court
for the Northern District of Texas
m 1:06-CV-22

———————————

BEFORE DAVIS, SMITH, and OWEN,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge.[*]

Jimmy Whitt ("Whitt") brought this 42 U.S.C. § 1983 action against Stephens County, James Reeves in his individual capacity and as Sheriff of Stephens County, and five unknown employees for damages stemming from the death of his son, Jamie Whitt ("Jamie"), at the county jail. The county and Reeves filed a joint motion for summary judgment based on qualified immunity, which was granted in part and denied in part. Whitt appeals, and we affirm.

## I.

Jamie was arrested and jailed. Upon Jamie's arrival, jailer Kyle Buce administered a Mental Disability/Suicide Intake Screening Form adopted by the Texas Commission on Jail Standards ("TCJS"). Jamie responded negatively when asked whether he had attempted suicide; had thoughts about killing himself; was considering killing himself that day; had ever had long periods without sleep; or had had periods of particular excitement. Jamie answered affirmatively to only one question, whether he had "experienced a recent loss or death [of] a family member or friend or [whether he was] worried about major problems other than [his] legal situation."

Buce also noted that Jamie appeared to be in a good mood, was not acting in a strange manner, and did not exhibit any signs of depression. Buce concluded that Jamie was not a suicide risk, so he confined him to a general cell without any special instructions.[1] A little more than five hours after Jamie was admitted to the jail, he was found dead in his cell, appearing to have hung himself with a leather belt he had tied to a pipe running along the ceiling.

## II.

Whitt sued, alleging two alternative theories of liability: that the county and the individual defendants had violated Jamie's rights under the Fourth and Eighth Amendments to receive appropriate treatment for a mental or medical condition while in custody; and that the individual defendants had harassed, assaulted, attacked, beaten, and tortured Jamie, causing his death. The defendants jointly moved to dismiss based on qualified immunity. The district court granted the motion for qualified immunity of the John Does and Sheriff Reeves in their individual capacity with regard to the former claim of failure to provide appropriate treatment and denied the motion with regard to the latter claim.[2] Whitt appeals that order.

## III.

We review a summary judgment *de novo*, using the same standard applicable in the district court. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999). "After consulting applicable law to ascertain the material factual issues, we consider the evidence

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The TCJS has promulgated extensive procedures for monitoring inmates who present a risk of suicide. It is undisputed that these procedures were not followed here.

[2] Whitt's alternative allegation, that the defendants attacked and killed Jamie, is not at issue in this appeal.

bearing on the issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant." *Id.* "Summary judgment is properly granted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating an assertion of qualified immunity, we conduct a two-prong inquiry. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (en banc). First, we ask "whether a constitutional right would have been violated on the facts alleged." *Id.* at 322-23. Second, we ask whether the constitutional right was "clearly established." *Id.* at 323.

States owe a duty under the Due Process Clause to provide pretrial detainees with basic human needs, including medical care and protection from harm, during their confinement. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Liability will not attach for an episodic act or omission "unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id.* This standard encompasses two parts: (1) The prison official must have "actual knowledge of the substantial risk of suicide," and (2) the official must respond with deliberate indifference. *Id.*

Whitt's evidence, even taken in the light most favorable to him, is plainly insufficient to demonstrate that the individual officials had actual knowledge that the decedent was a suicide risk. Whitt relies on a single affirmative answer on an intake screening exam, where Jamie indicated that he had either recently lost a family member or friend or was worried about major problems other than his arrest. Whitt has made no showing that all officers would interpret an affirmative answer to this question as evidence that the defendant was a suicide risk.

"If officers of reasonable competence could disagree on an issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). No officers report observing any troubling behavior from Jamie. Even if officers were negligent in failing to assess and monitor Jamie properly, liability will not attach for negligence.

The majority of Whitt's evidence demonstrates the failure of the individual officers and the jail to follow protocols mandated by Texas law and administratively adopted by the TCJS. It is well established that violations of state law are not actionable under § 1983.[3] "[O]fficials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation." *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984). The administrative protocols do not establish constitutional rights to treatment for detainees, nor do they so purport. Additionally, even if Whitt's evidence of insufficient training of jail officials

---

[3] *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991) (citing *Jones v. Diamond*, 594 F.2d 997, 1011 (5th Cir. 1979)).

might support liability against the county, it will not support liability against the untrained officers in their individual capacity.[4]

The motion to expedite the appeal or to stay the trial is DENIED. The motion to vacate the judgment is DENIED. The motion to remand is DENIED. The judgment is AFFIRMED.[5]

---

[4] *See City of Canton v. Harris*, 489 U.S. 378, 388-89; *Evans v. Marlin*, 986 F.2d 104, 107 (5th Cir. 1993).

[5] After this appeal was filed, Whitt moved to vacate the judgment and remand in light of newly-discovered evidence that he claims may show that jail officials were deliberately indifferent in failing to resuscitate Jamie and in denying medical attention. Although we deny the motion to vacate, we express no opinion on the merits of any motion that might be filed pursuant to Federal Rule of Civil Procedure 60(b). Our analysis is limited to examining Whitt's claim that the prison officials had actual knowledge that his son was a suicide risk and that they could be liable under § 1983 for failure to follow state administrative regulations.